**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ZAMPERLA, INC.; and ANTONIO ZAMPERLA, SPA,

Plaintiffs,

v. Case No. 6:13-cv-1807-Orl-37KRS

I.E. PARK SRL,

Defendant.

---

**ORDER**

In this patent-infringement action, two competing amusement-park-ride manufacturers request construction of the term "support structure" as it is used in Claims 1, 3, and 33 of U.S. Patent No. 6,884,177 (the "'177 Patent").

Plaintiffs Zamperla, Inc. and Antonio Zamperla, SpA and Defendant I.E. Park, srl filed a joint claim-construction statement. (Doc. 60.) Additionally, each party filed a claim-construction brief. (Docs. 61, 63.) The parties stipulated to construction without a hearing. (Doc. 64, p. 1.) Accordingly, the matter is ripe for the Court's adjudication.

**BACKGROUND**

The '177 Patent pertains to portable "amusement apparatuses" that set passenger "vehicles" into "rotational" and "oscillatory motion." *See* '177 Patent col. 1 ll. 6–15. In previously known apparatuses, a passenger vehicle affixed to a rotating "arm" would oscillate, or "swing,"[1] from a "complex structure formed by lattice members." *See id.* col. 1 ll. 21–29. Largely because of the lattice structure, such apparatuses were "bulky,"

---

[1] The '177 specification uses the terms "oscillation" and "swinging" synonymously. (*See, e.g.*, '177 Patent col. 5 ll. 13–14.)

complicated to install, and "difficult to transport." *Id.* col. 1 ll. 30–34. To overcome those disadvantages, the '177 Patent discloses a purportedly more compact, straightforward, and mobile apparatus in which a passenger vehicle rotates while oscillating back and forth along a "support structure" comprised of "at least one rail." [2] *See id.* Col. 1 ll. 36–39, Col. 6 ll. 34–42.

Several of the '177 Patent's claims use the term "support structure," but claim 1 is representative. It discloses an

> [a]musement apparatus comprising a vehicle for accommodating users, the vehicle being suitable for following a path in space the vehicle oscillatable about a center of instantaneous rotation and the vehicle rotable about an axis that is movable with the vehicle in accordance with oscillation of the vehicle, characterized in that the vehicle is supported on a *support structure* comprising at least one rail the shape of which defines the shape of the oscillation of the vehicle.

*Id.* col. 6 ll. 34–42 (emphasis added). According to the parties, the term "support structure" requires construction because it will impact whether the '177 Patent is invalid as anticipated by prior art. (*See* Doc. 60-1, p. 2.)

[2] Plaintiffs claim that their "Rockin' Tug" and Defendant's "Rocking Submarine" are both embodiments of the "amusement apparatus" disclosed in the '177 Patent. (*See* Doc. 1, ¶¶ 14, 25; Doc. 61, p. 2.) For context, the Rockin' Tug is pictured on the left, Figure 1 of the '177 Patent in the center, and the Rocking Submarine on the right:

(Doc. 1-3, p. 2; Doc. 1-7, pp. 3–4.)

## STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation and internal quotation marks omitted). Construction of patent claims is a matter of law. *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995). When parties request construction of disputed claims, courts have an "independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the adversary parties." *Id.*

With few exceptions, courts construe claim terms to give them their "ordinary and customary meaning"—that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. To do so, courts look primarily to the patent's intrinsic evidence: "the words of the claims themselves, the remainder of the specification, [and] the prosecution history." *Id.* at 1314. The words of the claims themselves, "both asserted and unasserted," are among the most persuasive intrinsic evidence, as the "context in which a term is used" can be highly instructive. *Id.* Likewise, the specification is "always highly relevant" and is "usually dispositive," *Vitronics Corp. v. Conceptronic*, *Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996), because "claims must be read in view of the specification," *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The prosecution history is less useful, but it can narrow a term's construction; "The purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005).

Courts also may look to extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. However, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317–18 (discussing the "several reasons" why extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms").

Ultimately, "there is no magic formula," "catechism," or "rigid algorithm for claim construction." *Id.* at 1324. "Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.*

Several interpretive principles guide construction of disputed claim terms. *See Bonutti Skeletal Innovations, LLC v. Arthrex, Inc.*, No. 6:13-cv-620-Orl-22TBS, Doc. 79 at *5 (M.D. Fla. Mar. 25, 2014). First, absent evidence to the contrary, courts presume that claim terms "are used consistently throughout the patent." *Phillips*, 415 F.3d at 1314. Second, "[u]nder the doctrine of claim differentiation, each claim in a patent is presumptively different in scope." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1375 (Fed. Cir. 2002) (citation and internal quotation marks omitted). Accordingly, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314. Third, courts construe claims "with an eye toward giving effect to all of

their terms, even if it renders the claims inoperable or invalid." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010).

**DISCUSSION**

| **Disputed Claim Term: "Support Structure"**<br>'177 Patent—Claims 1, 3, and 33 | |
|---|---|
| **Plaintiffs' Constructions** | **Defendant's Construction** |
| *Primary proposed construction*:<br>"A load-bearing support structure upon which the vehicle is supported from below."<br><br>*Alternative proposed construction*:<br>"A support or load-bearing structure suitable for supporting the vehicle from below and for defining, at least partially, a component of its path in space." | *Only proposed construction*:<br>"A structure suitable for supporting the vehicle and for defining, at least partially, a component of its path in space." |

As a baseline definition, the parties agree that the term "support structure" at least means "a structure suitable for supporting the vehicle and for defining, at least partially, a component of its path in space."[3] (*See* Doc. 64-1, p. 1.) They dispute whether the term

[3] Contrary to Defendant's characterization (Doc. 63, p. 6), the baseline definition does not reflect the patentee's own lexicography. "To act as its own lexicographer, a patentee must *clearly* set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (emphasis added). "For example, in *3M Innovative Properties Co. v. Avery Dennison Corp.,* [the Federal Circuit] held that the patentee acted as its own lexicographer when the specification stated: '"Multiple embossed" *means* two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing.'" *Id.* at 1366 (quoting 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004) (emphasis added)). Here by contrast, the parties draw their baseline definition directly from this portion of the '177 Patent's "detailed description of the preferred embodiment": "A support structure, generally indicated **16**, is suitable for supporting the vehicle **12** and

includes two additional limitations: (1) that the support structure must be "load-bearing"; and (2) that the support structure must support the vehicle "from below." (*See id.*) Plaintiffs argue that the term includes both limitations; Defendant argues that it includes neither.

In the Court's view, this case presents a situation where "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Fundamentally, the parties dispute what it means to "support" something, and neither party suggests that the term "support" has a specialized or technical meaning in the amusement-apparatus context. (*See* Docs. 61, 63.) Accordingly, the Court concludes that a skilled practitioner would read "support" in the '177 Patent as having its commonly understood meaning: "to bear or hold up." *See Support*, *Random House Webster's Unabr. Dictionary* (2d ed. 2001).[4] Facially, that definition includes the "load-bearing" limitation, but does not include the "from below" limitation.

---

for defining, at least partially, a component of its path in space." '177 Patent, col. 2 ll. 40–42. Even the numbers, which bear emphasis in the original, correspond to labels in a depiction of the preferred embodiment. (Doc. 61-1, p. 3 (corresponding to "Figure 1").) "[I]n determining whether a statement by a patentee was intended to be lexicographic, it is important to determine whether the statement was designed to define the claim term or to describe a preferred embodiment." *E-Pass Technologies, Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003). The baseline definition plainly describes the latter.

Additionally, much of the tension between the parties' positions appears to arise out of the baseline definition's circuity. After all, defining the term "support structure" largely as a "structure suitable for supporting" unhelpfully presumes that the reader has a preexisting notion of what "supporting" means.

[4] "[J]udges are free to . . . rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322–23 (citation and internal quotation marks omitted). For general terms, "general purpose dictionaries may be helpful," *id.* at 1314, if they were "publicly available at the time the patent [was] issued." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed. Cir. 2002).

Review of the intrinsic evidence compels the same conclusion. Regarding the "load-bearing" limitation, the term "load-bearing" never appears in the '177 Patent's claims,[5] but it appears multiple times in the specification—always as a synonym for "support." For example, the patentee repeatedly uses the term "load-bearing structure" synonymously with the term "support structure" when describing an embodiment of the disclosed apparatus that combines the support structure with a trailer. *See* '177 Patent col. 2 ll. 48–51 ("The *support structure* . . . or *load-bearing structure* for the vehicle is advantageously combined with the chassis of the trailer, simplifying both the movement and the assembly of the apparatus." (emphasis added))[6]; *compare also id.* col. 3 ll. 52–56 ("According to one possible embodiment, the *support structure* . . . is advantageously suitable for forming a transportation trailer . . . ." (emphasis added)), *with id.* col. 5 ll. 52–56 ("[T]he amusement apparatus according to the invention . . . combin[es] the *load-bearing structure* of the apparatus with the framework of the

[5] For this reason, the doctrine of *claim* differentiation does not apply and the terms "support" and "load-bearing" are not presumed to have different scopes. *See Ecolab*, 285 F.3d at 1375. The fact that a "load-bearing structure" never appears in the claims also undercuts Defendant's position that the patentee envisioned support structures and load-bearing structures as "alternatives." (Doc. 63, p. 9.)

[6] Notably, this sentence structure is consistent with other instances where the patentee used different terms as synonyms (for clarity) rather than as alternatives. For example, as addressed above, *see supra* note 1, the patentee uses the terms "swinging" and "oscillation" synonymously in the following passage:

> The first drive means . . . bring about the *swinging* or *oscillation* of the vehicle along the axis . . . on the rails . . . . The shape of the rails defines the shape of the "*swinging*" component of the path of the vehicle. If rails shaped as sectors of circles are provided, the vehicle *oscillates* about a substantially fixed centre corresponding to the centre of the circle along which the rails extend, whilst the vehicle is supported on the rails.

'177 Patent col. 5 ll. 13–20 (emphasis added).

transportation trailer." (emphasis added)). Based on the synonymous use of the terms "load-bearing" and "support" in the '177 specification, the Court concludes that the term "support structure" includes the implicit limitation that the structure must be load-bearing.[7] *See, e.g.*, *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011) (holding that the terms "homogenous solid solution" and "homogenous ceramic composite" were synonyms based on their synonymous usage in the specification).

As for the "from below" limitation, the parties' dispute turns on the relationship between the words "support" and "suspend" in the specification. According to its background portion, the disclosed apparatus, in which a vehicle is "*supported*" by means of "at least one rail," improves upon previously known apparatuses, in which a "vehicle is *suspended* by means of at least one arm." *See* '177 Patent col. 1 ll. 21–39, Col. 6 ll. 34–42. Based on that differentiation, Plaintiffs essentially argue that "support" and "suspend" are contrasting terms, with support coming "from below" and suspension coming from above. (*See* Doc. 61, p. 3.) Defendant counters that "support" is a catch-all term that encompasses the narrower term "suspend." (*See* Doc. 63, p. 12 (characterizing Plaintiffs' proposed construction as a "sub-set" of Defendant's proposed construction).)

Nothing in the specification rules out either proposed constructions, so the Court must adopt Defendant's. "Where a specification does not *require* a limitation, that limitation should not be read from the specification into the claims." *Specialty Composites*

[7] Further, construing a "support structure" as being potentially incapable of bearing weight would be nonsensical. Tellingly, Defendant has not offered an explanation as to how a structure could "support" a passenger vehicle without bearing all or part of its weight, nor has Defendant addressed why the patentee would have claimed an apparatus with a presumably nonfunctional component. (*See* Doc. 63.) Courts "strive, where possible, to avoid nonsensical results in construing claim language." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011).

*v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). Plaintiffs' proposed construction would read a limitation from the specification into the claims, Defendant's would not, and the specification does not favor either one; the Court must therefore adopt Defendant's non-limiting construction.[8] *See id.*

**CONCLUSION**

As addressed above, the Court finds that the term "support" as used in the '177 Patent includes the "load-bearing" limitation but does not include the "from below" limitation. Accordingly, the Court hereby **CONSTRUES** the term "support structure" to mean "a structure suitable for bearing all or part[9] of the vehicle's weight and for defining, at least partially, a component of the vehicle's path in space."

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 6, 2015.

---

[8] While not central to the Court's analysis, two additional points weigh against inclusion of the "from below" limitation. First, Plaintiffs imply in their papers that the patentee's criticism of the previously known suspension apparatuses amounts to a disavowal of amusement-apparatus embodiments in which the vehicle is suspended. (*See* Doc. 61, p. 3.) However, "[m]ere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal." *Thorner*, 669 F.3d at 1365. Second, extrinsic evidence also supports Defendant's construction; general-usage dictionaries that address support "from below" clarify that the limitation is not required. *See, e.g.*, *The Am. Heritage Dictionary* (2d. coll. ed. 1982) (defining "support" as "[t]o bear the weight of, esp."—that is, especially but *not necessarily*—"from below").

[9] In its memorandum, Defendant argues that the limitation "load-bearing" would itself require construction if adopted by the Court. (Doc. 63, pp. 12–13.) To preempt the need for further construction, the Court notes that the evidence intrinsic to the '177 Patent does not necessarily require the support structure to bear *all* of the vehicle's weight on its own, and thus the Court declines to read that additional limitation into the claims. *See Specialty Composites*, 845 F.2d at 987 (cautioning against reading limitations into claims that are not absolutely required).

Copies:

Counsel of Record